IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MITY-LITE, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>　　　　Defendants. | Court No. 26-01165 |

## COMPLAINT

Plaintiff, Mity-Lite, Inc. ("Plaintiff"), by and through its attorneys, alleges and states as follows:

1. This action concerns Defendants' collection of unlawful duties imposed pursuant to the International Emergency Economic Powers Act ("IEEPA").

2. Plaintiff is a U.S.-based importer of merchandise subject to the challenged duties in this complaint.

3. Beginning in February of 2025, through a series of executive orders, President Trump invoked IEEPA as authority to impose new and substantial tariffs ("IEEPA tariffs") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

4. On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize these tariffs. *Learning Resources, Inc. v. Trump*, Appeal Nos. 24-1287 and 25-250, 2026 WL 477534 (U.S. Feb. 20, 2026).

5. Through this action, Plaintiff asks the Court to hold for it what the Supreme Court held in *Learning Resources*: that the IEEPA duties imposed by Defendants, and the underlying executive orders that directed them, are unlawful.

6. The Supreme Court ruled upon the consolidated challenges to the IEEPA tariffs in *Learning Resources*, arising from a district court case, *Learning Resources, Inc. v. Trump*, 784 F. Supp.3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025), and a companion case arising out of this Court, *V.O.S. Selections, Inc. v. United States*, 772 F. Supp.3d 1350 (Ct. Int'l Trade 2025) *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, Appeal No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025), both of which held that IEEPA did not authorize the challenged IEEPA tariffs. After holding argument on November 5, 2025, the Supreme Court held that IEEPA does not authorize the President to impose tariffs and affirmed the U.S. Court of Appeals for the Federal Circuit's ("Federal Circuit") judgment in Appeal No. 25-250 and vacated and remanded Appeal No. 24-1287 with instructions to dismiss for lack of jurisdiction.

7. This separate action is necessary, however, because even though the Supreme Court affirmed the Federal Circuit's order holding the IEEPA tariffs and underlying executive orders unlawful, importers that have paid IEEPA duties, including Plaintiff, are not guaranteed a refund for those unlawfully collected tariffs in the absence of their own judgment and judicial relief.

8. Plaintiff is filing this action to protect its entitlement to refunds of its IEEPA tariffs (regardless of whether the subject entries have been liquidated or are currently unliquidated) so as to ensure that the tariffs cannot be considered final upon liquidation, such that Plaintiff is deprived of a remedy for unlawfully collected IEEPA tariffs.

9. Accordingly, Plaintiff seeks (i) a declaration that the IEEPA duties and the executive orders underlying the IEEPA duties are unlawful; (ii) an injunction preventing Defendants from collecting IEEPA duties on Plaintiff's entries; and (iii) a full refund from Defendants of all IEEPA duties paid by Plaintiff to the United States as a result of the executive orders challenged in this lawsuit, regardless of the liquidation status of those entries on which the IEEPA duties were paid.

## PARTIES

10. Plaintiff, Mity-Lite, Inc., is a U.S. Company, incorporated in Utah.

11. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security ("DHS") headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

12. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

13. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

14. Defendants are referred to collectively in this complaint as "CBP".

## JURISDICTION

15. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1334 (Fed. Cir. 2025), *aff'd*, No. 25-250, 2026 WL 477534 (U.S. Feb. 20, 2026).

16. 28 U.S.C. § 1581 provides that "the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States providing for … tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), and "administration and enforcement with respect to the matters referred to in paragraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section." *Id.* § 1581(i)(1)(D).

17. Here, the claims at issue relate to executive orders that made amendments to the Harmonized Tariff Schedule of the United States ("HTSUS"). The HTSUS is a law of the United States setting tariffs. This Court, therefore, possesses subject matter jurisdiction over this action under 28 U.S.C. § 1581(i). *See V.O.S. Selections*, 149 F.4th at 1329; *Learning Resources*, 2026 WL 477534 at *6.

18. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

19. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders. Declaratory and injunctive relief from this Court would redress those injuries.

**GENERAL PLEADINGS**

**I.      President Trump invoked his authority under IEEPA to impose a series of tariffs.**

   **A.      The IEEPA duties**

   20.     On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Fentanyl Tariff Orders."

   21.     The executive order directed at Mexico, Executive Order 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) ("Mexico Tariff Order"), imposed an additional 25 percent tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

   22.     The executive order directed at Canada, Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025) ("Canada Tariff Order"), declared an emergency because of opioid trafficking, and also imposed a 25% tariff, with certain exceptions.

   23.     Finally, the executive order directed at China, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national

emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

24. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

25. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025) ("February 5 Amendment").

26. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

27. On April 2, 2025, citing trade deficits with our trading partners as its own national emergency, President Trump issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the

United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

28. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies ... suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *Id.* at 15,041.

29. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, Exec. Order No. 14,259, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

30. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% trafficking tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

31. In implementing the executive order-based tariff regime, the Defendant directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs to be entered under new tariff codes.

32. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066, ECF No. 2 (Apr. 14, 2025). As discussed below, this Court held the orders were unlawful; the Federal Circuit, sitting *en banc*, and the Supreme Court, affirmed.

33. In the months since the *V.O.S. Selections* complaint was filed, President Trump, invoking IEEPA, has issued additional executive orders imposing additional tariffs and modifying others. By this complaint, however, Plaintiff challenges only those orders the Federal Circuit has already held to be unlawful, which the Supreme Court also found to be unlawful ("Challenged Tariff Orders").

    **B.**    **CBP's implementation of the unlawful tariffs**

34. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

35. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

36. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

37. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to

8

modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

38. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**C.     Liquidation**

39. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

40. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

41. CBP then fix[es] the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

42. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

43. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, liquidation is done automatically by operation of law. CBP tries to liquidate duties 314 days after the date of entry of the goods and will usually post a notice on its website.

44. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

45. This Court possesses the equitable authority to suspend liquidation. *See, e.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

46. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514. CBP can also voluntarily reliquidate within 90 days of the liquidation. *See id.* § 1501. But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

47. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

48. Notwithstanding this lack of certainty, this Court has recently spoken to this issue. In *AGS Company Automotive Solutions v. United States et al*, plaintiffs challenged the legality of the same IEEPA duties challenged in *V.O.S. Selections*. *AGS*, No. 25-00255, ECF 3 at 7.

49. In *Popsockets, LLC v. United States*, plaintiff challenged the same duties and additionally challenged the legality of IEEPA duties imposed on imported merchandise of Brazil and India under Executive Orders 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (July 30, 2025); 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025);

10

and 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467 (Nov. 20, 2025). *Popsockets*, No. 25-00379, ECF 4 at 5.

50. Defendants in that action—the same as those identified here—stipulated that

> they will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties.

*Popsockets*, No. 25-00379, ECF 8 at 1.

51. Thereafter, this Court relied upon the defendants' stipulation and the court's 28 U.S.C. § 1581(i) jurisdiction to hold that this Court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *AGS*, No. 25-00255, ECF 29 at 6.

## II. IEEPA does not authorize tariffs.

52. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

53. None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that the President and CBP are leaning on to impose and collect the IEEPA duties. IEEPA does not authorize what the Challenged Tariff Orders seek to impose.

54. IEEPA grants the President certain powers, but they "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

55. Those powers include the ability to "investigate, regulate, or prohibit" certain transactions in foreign exchange, payments through banks involving foreign countries or nationals, or imports of "currency or securities." 50 U.S.C. § 1702 (a)(1)(A).

56. The President may also control, block, or prohibit the movement or importation of funds or property in which "any foreign country" or foreign national has "interest" in, and which is also subject to the U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(B).

57. Finally, and only when the U.S. is engaged in "armed hostilities" or has been attacked by a foreign country, the President may "confiscate" property of such a foreign person or country that also is subject to U.S. jurisdiction. 50 U.S.C. § 1702(a)(1)(C).

58. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

A. **The U.S. Constitution vests in Congress—not the President—the power to impose tariffs.**

59. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

60. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises..." U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id*., cl. 3 ("Commerce Clause").

61. It has always been understood that tariffs fall within the Taxing and Commerce Clauses.

62. To the extent it is ever permissible under the United States Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it

must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress did no such thing. *Learning Resources*, 2026 WL 477534 at *10.

63. Reading IEEPA as authorizing tariffs would be self-defeating. In fact, the Supreme Court held that doing so would "render IEEPA partly unconstitutional. IEEPA authorizes the President to 'regulate … importation or exportation.' 50 U.S.C. § 1702(a)(1)(B) (emphasis added). Taxing exports however, is expressly forbidden by the Constitution. Art. I. §9, cl. 5." *Learning Resources*, 2026 WL 477534 at *11.

64. Moreover, "[c]ourts expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 716 (2022) (cleaned up) (*quoting Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324 (2014)). When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

65. By any objective measure, the Challenged Tariff Orders are of vast economic and political significance. *Learning Resources*, 2026 WL 477534 at *9. Because IEEPA does not clearly authorize the President to set tariffs—indeed, the Supreme Court found that the power to impose tariffs was notably "[a]bsent from the lengthy list of powers" granted to the President under IEEPA—the Supreme Court found that the statutory language upon which Defendants relied impose tariffs, "the power to 'regulate … importation' does not fill that void." *Id.* at *10. Moreover, the Supreme Court stated that "We are therefore skeptical that in IEEPA—and IEEPA alone—Congress hid a delegation of its birth-right power to tax within the quotidian power to

'regulate.'" *Id.* Consequently, the Challenged Tariff Orders cannot stand and the defendants are not authorized to implement and collect them.

### B. Courts, including this Court, have agreed the IEEPA duties are not authorized.

66. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

67. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

68. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

69. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with oral argument held on November 5, 2025.

70. The Supreme Court issued its decision on February 20, 2026, affirming this Court's and the Federal Circuit's decisions that the IEEPA duties are unlawful. *Learning Resources*, 2026 WL 477534 at *13-14.

### III. Plaintiff paid preliminary IEEPA duties.

71. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

72. Plaintiff's imports subject to IEEPA entered the United States under new HTSUS codes from foreign countries.

73. Plaintiff has paid IEEPA duties on a continuous basis.

74. Prior to filing this complaint, Plaintiff requested of CBP that it extend liquidations for its entries subject to IEEPA tariffs. As of the date of this filing, CBP has not replied to that request.

75. As a result, the entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have begun to liquidate as of the date of this filing and will continue to liquidate during the pendency of this action.

### IV. Plaintiff is "similarly situated" to other plaintiffs before this court.

76. Defendants have stipulated that "similarly situated" plaintiffs are entitled to the same relief in matters related to the challenged IEEPA tariffs in the event that those duties are found to be unlawful.

77. In *Popsockets*, the parties agreed that:

> [T]he term "IEEPA duties" refers to all entries for which plaintiff was the importer of record and that are subject to the duties imposed by the executive actions plaintiff challenges in its complaint or any amendment thereto. The parties understand that

defendants will only refund IEEPA duties collected pursuant to the executive actions that are found to be unlawful[.]

*Id.* at 2. In *AGS,* defendants in that action—the same as those identified here—acknowledged the Court's incorporation of the defendants' stipulations in *Popsockets* to the proceedings in *AGS*. *AGS*, No. 25-00255, ECF 34 at 1-2, citing ECF 29 at 5.

78. Also in *AGS*, Defendants further stipulated that

Similarly situated plaintiffs are those who challenge IEEPA tariffs in a manner and on grounds that substantially overlap with the IEEPA tariffs cases presently before the Supreme Court. … [G]enerally a properly raised IEEPA tariff challenge would be subject to the stipulation.

*AGS*, No. 25-00255, ECF 34 at 2.

79. Plaintiff in this action has challenged IEEPA tariffs in a manner and on grounds that substantially overlap with the plaintiffs in *V.O.S.*, *AGS*, *Popsockets*, and thousands of other cases presently before this court. Thus, Plaintiff is a "similarly situated" plaintiff entitled to the same relief to which Defendants stipulated in *AGS* and *Popsockets*. Defendants may not oppose the Court's authority to order reliquidation of Plaintiff's entries of merchandise subject to the challenged IEEPA duties and will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision has been issued finding the duties to have been unlawfully collected and ordering defendants to refund the duties.

## STATEMENT OF CLAIMS

### COUNT I

### THE CHALLENGED TARIFF ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS*

80. Plaintiff incorporates paragraphs 1-79 above by reference.

81. The Court of International Trade in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), held

that the President exceeded his authority under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

82. As the *V.O.S. Selections* Court explained, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates.

83. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines.

84. The Supreme Court affirmed on February 20, 2026, holding that "the terms of IEEPA do not authorize tariffs." *Learning Resources*, 2026 WL 477534 at *13.

85. The Challenged Tariff Orders are materially identical in structure, authority claimed, and effect to those struck down in *V.O.S. Selections*. They purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA. For the same reasons set forth in *V.O.S. Selections* and its affirmance by the Federal Circuit and the Supreme Court, the Challenged Tariff Orders exceed the President's statutory authority and are therefore unlawful, void *ab initio,* and without effect as applied to Plaintiff.

86. Plaintiff respectfully requests that this Court apply its precedent and the binding decisions of the Federal Circuit and the Supreme Court, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

## COUNT II

### (DECLARATORY RELIEF, 28 U.S.C. § 2201)

87.     Plaintiff incorporates paragraphs 1-86 above by reference.

88.     Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

89.     Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

90.     Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

91.     This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a)      Declare that the President lacks authority under IEEPA to impose the challenged tariffs;

b)      Declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c)      Declare that, with respect to Plaintiff, CBP lacks authority to implement, enforce, administer, and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d) With respect to Plaintiff, enjoin Defendants from imposing, enforcing, administering, or collecting any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e) Order Defendants to refund to Plaintiff all IEEPA duties collected on its entries, regardless of liquidation status, including those that it continues to collect during the pendency of this appeal, with interest as provided by law;

f) Award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g) Grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: February 24, 2026

/s/ *Deanna Tanner Okun*
Deanna Tanner Okun
Lydia C. Pardini
Dominic L. Bianchi
Jane C. Dempsey
Alissa M. Chase
Joonho Hwang
POLSINELLI PC
1401 I ("Eye") Street NW
Suite 800
Washington, DC 20005
Tel. (202) 626-8329
dtokun@polsinelli.com

*Counsel for Plaintiff Mity-Lite, Inc.*